CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JUN 20 2016

JULIA C. DUDLEY, CLERK
BY:
      DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| CHARLES T. HOYE,<br>    Plaintiff, | Civil Action No. 7:15-cv-00203 |
| v. | **MEMORANDUM OPINION** |
| LT. GILMORE, et al.,<br>    Defendant. | By:  Hon. Michael F. Urbanski<br>       United States District Judge |

Plaintiff Charles T. Hoye, a Virginia inmate proceeding pro se, commenced this civil action pursuant to 42 U.S.C. § 1983. Plaintiff names staff of the Coffeewood Correctional Center ("CCC") and Virginia Department of Corrections ("VDOC") as defendants. Plaintiff argues in this action that his transfer from CCC to Deep Meadow Correctional Center ("DMCC") was retaliatory and frustrated the ability of his children to visit and communicate with him. Defendants filed a motion to dismiss, and Plaintiff responded with a "motion to amend," asking the court to consider exhibits in support of the second amended complaint. After considering the motions, the court grants Plaintiff's motion to amend in part and grants Defendants' motion to dismiss.

I.

Plaintiff, a Jewish inmate suffering from diabetes, was housed at CCC from his initial entry into the VDOC in 2009 until his transfer to DMCC on January 14, 2015. While at CCC in August 2013, Plaintiff began filing administrative grievances to complain that the VDOC's Common Fare Menu did not accommodate both his religious and medical needs. Staff responded, advising Plaintiff to choose a diet that satisfies either his medical needs (a non-Kosher diet) or his religious needs (a sugary diet).

Unsatisfied, Plaintiff commenced an action in state court pursuant to the Virginia Declaratory Judgments Act, Virginia Code § 8.01-184. Thereafter, defendants Gourdine and

Martin "immediately suspended" Plaintiff from the Common Fare Menu, and CCC staff instituted an allegedly false institutional disciplinary action against him.

In April 2014, Plaintiff commenced a civil action pursuant to 42 U.S.C. § 1983 in this court, Hoye v. Clarke, No. 7:14-cv-00124, against defendants Lt. Gilmore, Martin, Gourdine and other staff. "Promptly after service of process" was ordered in that case, defendants Hillian and Gourdine instructed CCC security staff to prevent Plaintiff from using the prison's law library. Accordingly, Plaintiff sought to join Hillian as a defendant to the federal action and filed a regular grievance on January 7, 2015, to regain access to the law library. Two days later on January 9, 2015, Defendants allegedly requested that Plaintiff be transferred from CCC to DMCC with the specific condition Plaintiff never be allowed to return to CCC. Defendant Dawkins approved the request the same day, and Plaintiff was transferred from CCC to DMCC five days later on January 14, 2015.

Plaintiff filed an informal complaint, complaining that the transfer was retaliatory in violation of VDOC policies. Defendant Hillian replied, noting the transfer was "deemed necessary for the well being of DOC." Defendant Lt. Gilmore replied to Plaintiff's regular grievance, noting the transfer was "necessary for the orderly operation of the facility." Defendant Parks replied to Plaintiff's grievance appeal, stating the transfer was "for purposes of managing the prison population."

Before the transfer to DMCC, Plaintiff's ex-wife was able to bring Plaintiff's young daughters from Fairfax, Virginia, to CCC every two months, and Plaintiff was able to frequently call his daughters. After the transfer, however, visitation "has become practically impossible due to the distances" and the increased cost of long-distance phone charges adds to "his and the children's sense of isolation from each other and to the detriment of both."

2

Plaintiff claims that Defendants "unlawfully and tortiously alienated and deprived" his daughters "of parental consortium" with Plaintiff. The remaining two claims allege that Defendants conspired to cause, and did cause, a retaliatory transfer in violation of the First Amendment of the United States Constitution; Article I, section 12 of the Virginia Constitution; and VDOC Operating Procedure 866.1.

## II.

In response to Defendants' motion to dismiss, Plaintiff filed a "motion for leave to amend or, in the alternative, to supplement the second amended complaint with a request for judicial notice of adjudicative facts" and a motion to file a response out of time.[1] Plaintiff acknowledges that the proposed third amended complaint does not add any cause of action or join a new party. Instead, he merely wishes the court to consider the proposed exhibits in support of the complaint and in opposition to the motion to dismiss. Accordingly, the court grants the motions to the extent it will consider the exhibits in adjudicating the motion to dismiss.

## III.

The court must dismiss an action or claim filed by an inmate if the court determines that the action or claim is frivolous or fails to state a claim on which relief may be granted. See 28 U.S.C. §§ 1915(e)(2), 1915A(b)(1); 42 U.S.C. § 1997e(c). The first standard includes claims based upon "an indisputably meritless legal theory," "claims of infringement of a legal interest which clearly does not exist," or claims where the "factual contentions are clearly baseless." Neitzke v. Williams, 490 U.S. 319, 327 (1989). The second standard is the familiar standard for a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), accepting a plaintiff's factual allegations as true. A complaint needs "a short and plain statement of the claim showing

---

[1] Defendants did not oppose either motion.

3

that the pleader is entitled to relief" and sufficient "[f]actual allegations . . . to raise a right to relief above the speculative level . . . ." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotation marks omitted). A plaintiff's basis for relief "requires more than labels and conclusions . . . ." Id. Therefore, a plaintiff must "allege facts sufficient to state all the elements of [the] claim."[2] Bass v. E.I. Dupont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003).

To state a First Amendment § 1983 retaliation claim, a plaintiff must establish three elements: (1) the plaintiff's right to speak was protected; (2) the defendant's alleged retaliatory action adversely affected the plaintiff's constitutionally protected speech; and (3) a causal relationship existed between the plaintiff's speech and the defendant's retaliatory action. Suarez Corp. Indus. v. McGraw, 202 F.3d 676, 685-86 (4th Cir. 2000) (citations omitted).

Filing grievances cannot form the basis of a retaliation claim in this circuit because, pursuant to Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994), "there is no constitutional right to participate in grievance proceedings."[3] Furthermore, "there is no constitutional right to prison

---

[2] Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009). Thus, a court screening a complaint under Rule 12(b)(6) can identify pleadings that are not entitled to an assumption of truth because they consist of no more than labels and conclusions. Id. Although the court liberally construes pro se complaints, Haines v. Kerner, 404 U.S. 519, 520-21 (1972), the court does not act as an inmate's advocate, sua sponte developing statutory and constitutional claims not clearly raised in a complaint. See Brock v. Carroll, 107 F.3d 241, 243 (4th Cir. 1997) (Luttig, J., concurring); Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985); see also Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978) (recognizing that a district court is not expected to assume the role of advocate for a pro se plaintiff).

[3] See Booker v. S.C. Dep't of Corr., 583 F. App'x 43, 44 (4th Cir. 2014) (unpublished) (reversing a grant of summary judgment on an inmate's First Amendment retaliation claim where the inmate alleged prison officials retaliated via a disciplinary charge for his grievance about mail but, notably, offered no opinion whether the inmate's grievance was protected speech); but see Wright v. Vitale, No. 91-7539, 1991 U.S. App. LEXIS 15230, at *2, 1991 WL 127597, at *1 (4th Cir. July 16, 1991) (unpublished) (indicating that an inmate's claim about lost visitation privileges in retaliation for filing grievances "could state a constitutional claim" (citing other appellate courts' opinions)); Gullet v. Wilt, No. 88-6797, 1989 U.S. App. LEXIS 21274, at *4-5, 1989 WL 14614, at *2 (4th Cir. Feb. 21, 1989) (unpublished) (noting an inmate's First Amendment rights were implicated by his "claim that he is being transferred [to another prison] because prison officials are retaliating for [his] numerous institutional grievances," but concluded that he did not state a claim because the prison had legitimate, non-retaliatory reasons for the transfer (citing other appellate courts' opinions)); see also Collins v. Pond Creek Mining Co., 468 F.3d 213, 219 (4th Cir. 2006) (recognizing that unpublished decision are not afforded precedential value and "are entitled only to the weight they generate by the persuasiveness of their reasoning"); Hogan v. Carter, 85 F.3d 1113, 1118 (4th Cir.

4

visitation, either for prisoners or visitors." White v. Keller, 438 F. Supp. 110, 115 (D. Md. 1977), aff'd, 588 F.2d 913 (4th Cir. 1978). Plaintiff acknowledges he is allowed to pay for phone calls, and he does not have the right to free or unfettered telephone use. See, e.g., Benzel v. Grammer, 869 F.2d 1105, 1108 (8th Cir. 1989).

Accordingly, Defendants' motion to dismiss must be granted to the extent Plaintiff's presents a claim of retaliation based on filing administrative grievances, visitation, or "more expensive" phone calls. However, the court will assume the existence of the first element as to the filing of the federal and state lawsuits because "[t]he filing of a lawsuit carries significant constitutional protections, implicating the First Amendment right to petition the government for redress of grievances, and the right of access to courts." Am. Civil Liberties Union, Inc. v. Wicomico Cnty., 999 F.2d 780, 785 (4th Cir. 1993).

For the second element, "a plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from the exercise of [the protected] rights." Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 500 (4th Cir. 2005) (internal quotation marks and citations omitted). This objective inquiry examines the specific facts of each case, taking into account the actors involved and their relationship. Balt. Sun Co. v. Ehrlich, 437 F.3d 410, 416 (4th Cir. 2006). Because "conduct that tends to chill the exercise of constitutional rights might not itself deprive such rights, . . . a plaintiff need not actually be deprived of . . . First Amendment rights in order to establish First Amendment retaliation." Nonetheless, "the plaintiff's actual response to the retaliatory conduct provides

---

1996) ("Since unpublished opinions are not even regarded as binding precedent in our circuit, such opinions cannot be considered in deciding whether particular conduct violated clearly established law for purposes of adjudging entitlement to qualified immunity.").

5

some evidence of the tendency of that conduct to chill First Amendment activity." Constantine, 411 F.3d at 500.

> "Not every [government] restriction," however, "is sufficient to chill the exercise of First Amendment rights, nor is every restriction actionable, even if retaliatory." DiMeglio v. Haines, 45 F.3d 790, 806 (4th Cir. 1995). Illustrating the observation that "not every [government] restriction is sufficient to chill the exercise of First Amendment rights," we have recognized a distinction between an adverse impact that is actionable, on the one hand, and a de minimis inconvenience, on the other. "[A] plaintiff seeking to recover for retaliation must show that the defendant's conduct resulted in something more than a 'de minimis inconvenience' to her exercise of First Amendment rights." Constantine, 411 F.3d at 500 (citation omitted). Thus, in Wicomico County, we held that a prison's "decision to withdraw from its special arrangement [permitting an ACLU paralegal to meet with prisoners in private] ... may have inconvenienced Appellees, but it did not chill, impair, or deny their exercise of First Amendment rights" because the paralegal was still "free to visit with inmates in secure, non-contact meeting rooms," which was "all that [the prison] provided to any paralegal or other non-professional visitor." 999 F.2d at 786.
>
> In a proximate vein, the Supreme Court has condoned limiting retaliation liability when the challenged government action, whether conduct or speech, is so pervasive, mundane, and universal in government operations that allowing a plaintiff to proceed on his retaliation claim would "plant the seed of a constitutional case" in "virtually every" interchange. See Connick v. Myers, 461 U.S. 138, 148-49 (1983); see also id. at 143 (holding that, in the government employment context, public employers can reprimand or punish employees for their speech when that speech does not touch on matters of public concern); Kirby v. City of Elizabeth City, 388 F.3d 440, 448-49 (4th Cir. 2004); cf. Umbehr, 518 U.S. at 675 (noting that retaliation "may be justified [i.e., unactionable] when legitimate countervailing government interests are sufficiently strong"). Thus, the Connick Court recognized that the retaliation cause of action must be administered to balance governmental and private interests so as not to impose liability in everyday, run-of-the-mill encounters.
>
> Illustrating the . . . observation that not "every restriction [is] actionable, even if retaliatory," we have recognized that some government actions, due to their nature, are not actionable even if they satisfy all the generally articulated elements of a retaliation claim.

Balt. Sun Co., 437 F.3d at 416-17.

6

Plaintiff fails to allege any burden whatsoever to his ability to access courts due to the transfer, and the court does not find that a transfer from CCC to DMCC would chill the exercise of constitutional rights of an objectively reasonable plaintiff. See Constantine, 411 F.3d at 500 (noting a plaintiff's actual response to the retaliatory conduct is indicative of a chill to the protected activity). Plaintiff was transferred in between two Security Level 2 facilities, both of which are within the VDOC's Central Region.[4] Plaintiff was not transferred to a more restrictive living environment with fewer privileges so as to deter a person of ordinary firmness from pursuing litigation.[5] The VDOC's transfer of inmates between comparable Virginia correctional facilities in the same region is such a pervasive, mundane, and universal practice in its operations that allowing Plaintiff to proceed on his particular retaliation claim would plant the seed of a constitutional case in virtually every prison transfer between comparable prisons. Furthermore, Plaintiff cannot have a justifiable expectation that he would be incarcerated at CCC or any particular prison for the duration of his sentence. See, e.g., Meachum v. Fano, 427 U.S. 215, 224 (1976); see also Olim v. Wakinekona, 461 U.S. 238, 245 (1983) ("Even when . . . the transfer involves long distances and an ocean crossing, the confinement remains within constitutional

---

[4] The court takes judicial notice of these prisons' security levels and locations. COMMONWEALTH OF VIRGINIA – DEPARTMENT OF CORRECTIONS – FACILITIES, http://vadoc.virginia.gov/facilities/ (last visited May 6, 2016); see In Re Katrina Canal Breaches Consol. Litig., 533 F. Supp. 2d 615, 631-33 & nn.14-15 (E.D. La. 2008) (collecting cases indicating that federal courts may take judicial notice of governmental websites); Williams v. Long, 585 F. Supp. 2d 679, 686-88 & n.4 (D. Md. 2008) (collecting cases indicating that postings on government websites are inherently authentic or self-authenticating). The two prisons are approximately seventy miles apart, comparable to the distance between Fredericksburg and Richmond, Virginia.

[5] In Hill v. Lappin, 630 F.3d 468, 475 (6th Cir. 2010), the Sixth Circuit Court of Appeals noted that a transfer to a more-restrictive segregation unit could constitute the adverse action to state a retaliation claim. However, Plaintiff does not allege similar circumstances. In Pasley v. Conerly, No. 08-13185, 2010 U.S. Dist. LEXIS 104763, 2010 WL 3906120 (E.D. Mich. Sept. 10, 2010), a magistrate judge concluded that an "adverse action" included correctional staff's threat, inter alia, to transfer an inmate from a Michigan prison near Detroit to "far up North" away from his family after the inmate threatened to file a grievance. The district court adopted the report and recommendation because it believed such a threat could deter a person of ordinary firmness from exercising, in that circuit, the constitutional right to file prison grievances. Id., 2010 U.S. Dist. LEXIS 104697, 2010 WL 3894044 (E.D. Mich. Sept. 30, 2010). However, Pasley is not precedential in this circuit, and opinions issued from other circuits do not determine clearly established law for qualified immunity in the Fourth Circuit. Edwards v. City of Goldsboro, 178 F.3d 231, 251 (4th Cir. 1999).

7

limits. The difference between such a transfer and an intrastate or interstate transfer of shorter distance is a matter of degree, not of kind, and Meachum instructs that 'the determining factor is the nature of the interest involved rather than its weight.'").

Moreover, Plaintiff has described only a de minimis inconvenience to his and his childrens' ability to meet or communicate. See Constantine, 411 F.3d at 500 (noting a plaintiff must "show that the defendant's conduct resulted in something more than a de minimis inconvenience to [an] exercise of First Amendment rights" (internal quotation marks omitted)). No state action prevents the Plaintiff and his family from communicating or meeting; Plaintiff may receive visitors and may pay for outbound telephone calls. The fact it takes slightly longer for the children to arrive at DMCC or it costs Plaintiff more money to call are not sufficiently "adverse" circumstances to pursue a retaliation claim, even if he had a constitutional right to visitation or less expensive telephone calls. Accordingly, Defendants' motion to dismiss must be granted for these claims.

## IV.

To the extent Plaintiff alleges that Defendants violated the VDOC's policies or procedures, a claim that prison officials have not followed their own independent policies or procedures also does not state a constitutional claim. See United States v. Caceres, 440 U.S. 741, 752-55 (1978); Riccio v. Cnty. of Fairfax, 907 F.2d 1459, 1469 (4th Cir. 1990) (holding that if state law grants more procedural rights than the Constitution requires, a state's failure to abide by that law is not a federal due process issue). The court declines to exercise supplemental jurisdiction over any state-law claim pursuant to 28 U.S.C. § 1367(c)(3).

8

## V.

For the foregoing reasons, the court grants Plaintiff's motion to amend in part and also grants Defendants' motion to dismiss. Plaintiff's motion for a preliminary injunction is denied as moot.

ENTER: This 20th day of June, 2016. /s/ Michael F. Urbanski

United States District Judge